T. Hethe Clark, ISB No. 7265
Joshua J. Leonard, ISB No. 7238
Ryley Siegner, ISB No. 9174
Clark Wardle LLP
251 E. Front Street, Suite 310
Boise, ID  83702
P.O. Box 639
Boise, ID  83701
Telephone:  208/388-1000
Facsimile:  208/388-1001
filing@clarkwardle.com
*#23715.1*

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| RANDAL HEEB, an individual; and SHIRLEY ANN MERCHANT, an individual, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:19-cv-00190-BLW |
| vs. | ) ) | |
| WHIPPLE, INC., VIRTUAL DESIGN CONCEPTS, LLC and JASON WHIPPLE, an individual, | ) ) ) | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL** |
| Defendants. | ) ) | **SUMMARY JUDGMENT** |
| WHIPPLE, INC., | ) ) | |
| Counterclaimant, | ) ) | |
| vs. | ) ) | |
| RANDAL HEEB, an individual; and SHIRLEY ANN MERCHANT, an individual, | ) ) ) | |
| Counterdefendants. | ) ) | |

In their Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment ("Plaintiffs' Memorandum in Opposition"), Plaintiffs attempted to bootstrap an unreasonable interpretation of the facts in this case to support Plaintiffs' claims.  In some instances, the Plaintiffs, in their attempt to stave off summary judgment, even argued facts that differed from the allegations pleaded in their Complaint.  Based on the allegations contained in the Complaint, and further based upon the uncontroverted facts of record in this case, Defendants are entitled to summary judgment on Plaintiffs sixth claim for relief (Breach of Express Warranty), eighth claim for relief (Fraud), and ninth claim for relief (Violation of Idaho's Consumer Protection Act).

A.    **"SUBSTANTIAL COMPLETION" OF THE HOME WAS NOT REACHED.**

    1.    **The Project Did Not Reach Substantial Completion.**

Neither Plaintiffs nor Defendants deny that "substantial completion" is a creature of the Construction Agreement.  In Plaintiffs' Memorandum in Opposition, they argued that "critical language" in the Construction Agreement supported their argument that occupancy of the home established the date of substantial completion:

> Substantial completion of the home is the stage in the progress of the work when the home is sufficiently complete in accordance with the plans and specification[s] **so that Owner can occupy or utilize the home as their residence**.  Substantial completion shall not be earlier than the effective date of a permanent occupancy permit issued by governmental authorities.

Plaintiffs' Memorandum in Opposition, p.2, citing to PSOF, ¶ 6; Heeb Decl., Exh. D (emphasis in Plaintiff's Memorandum in Opposition, not in original).  The above emphasized line was the basis of Plaintiffs' argument that substantial completion was established because the project received a certificate of occupancy, which Whipple, Inc. scrambled to obtain early to allow Plaintiffs to host a party over Labor Day weekend in 2018.  Pursuant to the above-quoted section

in the Construction Agreement, a certificate of occupancy does not establish substantial completion, but substantial completion can, in no event, occur before a certificate of occupancy is obtained.

Plaintiffs ask this Court simply to ignore other operative language from the Construction Agreement that clearly provides how the date of substantial completion must be established:

> Contractor shall notify Owner when Contractor believes that the home is substantially completed.  If Owner concurs, Contractor shall confirm the date in writing to Owner, **which writing shall establish the date of substantial completion**, shall include a list of items to be completed or corrected and shall fix the time within which Contractor shall complete items listed therein.

Plaintiffs' Separate Statement of Material Facts ("PSOF"), ¶ 6; Heeb Decl., Exh. D; Complaint, Exh. B (emphasis added).  The above language in the Construction Agreement unambiguously prescribed the following process as a predicate to determining the date of substantial completion:

- **First**, Contractor (defined in the Construction Agreement as Whipple, Inc. - *see* Complaint, Exh. B, at p.1; see also Heeb Decl., Exh. D, at p.1) was required to notify Owner (defined in the Construction Agreement as Randal Heeb and Ann Merchant - see Id.) "when Contractor believes that the home is substantially completed."  *Id.*

- **Secon**d, Owner impliedly must decide whether it concurs with Contractor's determination of substantial completion.  *Id.*

- **Third**, if Owner concurs, Contractor was required to confirm the date in writing to Owner.  *Id.*  The Construction Agreement required this writing from Contractor to include three elements - it must:

  - confirm the date of substantial completion;

  - include a list of items to be completed or corrected; and

  - fix the time within which Contractor shall complete items listed therein.

*Id.*  Pursuant to the Construction Agreement, this "writing shall establish the date of substantial completion."  *Id.*

Plaintiffs and their former counsel understood that substantial completion was a formal process requiring an agreement, not merely a certificate of occupancy.  This is evidenced by the proposed substantial completion agreement Plaintiffs' former counsel sent Whipple, Inc., Heeb, and DuMerton.  March 5, 2020, Declaration of Jason Whipple, Exh. M.  The substantial completion agreement proposed by Plaintiffs' former counsel complied with the contractual requirements: an agreement that the house is substantially complete, including an agreed-upon punch list and deadlines for completion of punch list items.  Plaintiffs should be estopped from now taking an opportunistic and inconsistent position, because Plaintiffs and their former counsel understood and stated in writing (in the proposed substantial completion agreement - *see* March 5, 2020, Declaration of Jason Whipple, Ex. M) exactly what was required for substantial completion, particularly because where Plaintiff's former counsel reviewed and revised the contract.  *See Heinze v. Bauer,* 145 Idaho 232, 235–36, 178 P.3d 597, 600–01 (2008).

Plaintiffs complain that the substantial completion date was a "moving target."  **Of course it was - by its very nature it would be**, because the date of substantial completion was dependent on both the completion of certain tasks and compliance with the requirements contained in the Construction Agreement.  The punch list was not finalized as late as November 26, 2018, when Whipple, Inc. emailed Plaintiff Randal Heeb and discussed Plaintiff's proposed punch list, stating (in part):

> I received the list from Stephen [Dumerton] based on our walk through Wednesday.  I haven't had a chance to review it thoroughly yet but I assume it will be mostly familiar.
>
> . . .

Again, I haven't had a chance to thoroughly review the list from Stephen.

. . .

Upon my return, I will make it a priority to analyze the punch list provided by Stephen and Lauren *as well as any additions*.

Second Declaration of Joshua Leonard In Support of Plaintiff's Motion for Partial Summary Judgment ("Second Leonard Declaration"), Ex. B.

On November 29, 2018, Plaintiff's former counsel stated "[a]dmittedly, the punchlist is a work in progress and I understand you and Steve have yet to meet to discuss the punchlist and we need to get the complete list to you." Second Leonard Declaration, Ex. C.  Pursuant to section 12(a) of the Construction Agreement (quoted above), however, Whipple, Inc. was to provide a punch list to Plaintiffs upon substantial completion, not the other way around.  Complaint, Ex. B. As of November 29, 2018, tasks still were being added to the proposed punch list.  Whipple, Inc. had to approve the punch list because it was something it was agreeing to accomplish, and not merely a list of demands from a customer, which could potentially be entirely unreasonable.  As of November 29, the punch list was still being negotiated, and there was no agreement or writing, which meant there was no substantial completion.

It was irrelevant that Whipple, Inc., after the fact, stated that substantial completion occurred on any particular day, because the process prescribed by the clear and unambiguous language of the contract had not been satisfied.  Incidentally, Whipple, Inc.'s statements regarding the substantial completion date are inconsistent, which indicates that no agreement existed between Plaintiffs and Whipple, Inc. on the date of substantial completion, let alone a writing containing an agreement, an agreed-upon punch list, and deadlines for punch list completion.  These off-the cuff statements by Whipple, Inc. did not establish substantial

completion; only satisfaction of the all of the elements prescribed in the Construction Agreement would have established substantial completion.

Plaintiffs now seek to take advantage of Whipple, Inc.'s colloquial use of the term "punch list."  Plaintiffs know full well that Whipple, Inc. used the term "punch list" to refer to *any* work that needs to be touched up at any point in the project:

> Q. Okay. So when we talked about punch list and your understanding of the term punch list, what's your first knowledge of the existence of a punch list for the 555 job? When are we talking about that --
>
> A. I created one for myself that week.
>
> Q. Which week?
>
> A. The week of November 16th.
>
> Q. To your knowledge, was one created prior to November 16th of 2018?
>
> A. I create punch lists throughout the project for myself and for my workers and for subcontractors. Everybody gets a punch list at the end. Hey, there's three things you missed over here. So punch list is an ongoing term.
>
> Q. But in the end is a punch list something that comes up as the project nears the end of construction?
>
> A. No, punch lists are made throughout the project.
>
> Q. Throughout the project.
>
> A. Yeah, for multiple different reasons. That's a broad term. But the punch list described -- that's just a broad term. If you want to be more specific about the question, I can answer it more specifically about specific punch lists or punch lists relative to substantial completion.

Second Leonard Declaration, Ex. A, 113:2 – 114:1.

As just one hypothetical example of how Whipple, Inc. colloquially used the term "punch list," if touch-up work was required because the header or sole plate of a wall was misaligned, it would make absolutely no sense for the framer to wait until the wall was fully framed, drywalled, mudded, sanded, and painted to perform the necessary touch-up work to realign the

offending header or sole plate. Whipple, Inc.'s use of the term "punch list" to refer to such work should not be conflated with the final, agreed-upon punch list and completion deadlines, which were required to be included in a writing to establish substantial completion but were never agreed upon or memorialized in a writing from Whipple, Inc.

Substantial completion did not occur because there was no formal agreement reached by the parties, as required by the Construction Agreement. The proposed substantial completion agreement sent by Plaintiffs' former counsel demonstrates that Plaintiffs (or at least their former counsel) knew what was required to achieve substantial completion.

2. **Even If, Arguendo, the Project Reached Substantial Completion, Plaintiffs' Failure to Pay the November, 2018 Invoice Excused Whipple, Inc. from Further Performance (Including the Warranty).**

Plaintiffs continue to insist that they were entitled, under the Construction Agreement, to withhold payment of Whipple, Inc.'s November 2018 invoice because it was the "final payment." Plaintiffs' insistence ignores the uncontroverted facts that: **(i)** Whipple, Inc.'s November 2018 invoice was for labor, materials, and reimbursements on the project from the previous month, October of 2018 [March 5, 2020, Declaration of Jason Whipple in Support of Motion for Partial Summary Judgment ("Whipple Declaration"), Ex. A]; **(ii)** Whipple, Inc.'s November 2018 invoice was dated and delivered to Plaintiffs prior to the earliest date on which Plaintiffs alleged "substantial completion" occurred [Whipple Declaration, Exs. G, B]; and (iii) payment of the November 2018 invoice from Whipple, Inc. would not have been the "final payment," because by the date of Whipple, Inc.'s November 2018 invoice, Whipple, Inc. already had performed work and used materials on the project that would be included in another invoice, which would be dated in December of 2018 for work completed in November [Whipple Declaration, Ex. A].

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT                    7

### 3. Achieving Substantial Completion Would Not Have Authorized Plaintiffs to Stop Paying Whipple, Inc.

The Construction Agreement does not say that substantial completion triggers the final payment. Rather, it should properly be interpreted that final payment is not due until the punch list tasks contained in the substantial completion agreement are accomplished. Complaint, Ex. B, Section 18(d). However, arguendo, even if substantial completion had occurred as set forth in the Construction Agreement, it did not excuse Plaintiffs from paying the invoice for work performed, materials used, and reimbursements required during the prior month. Certainly it was obvious to Plaintiffs, after receiving over a dozen invoices from Whipple, Inc., that the November 2018 invoice was for work, materials, and reimbursements in October of 2018, and did not include work, materials, and reimbursements in November of 2018. (Plaintiffs knew, though, that Whipple, Inc., in November of 2018, was working on non-punch list tasks after the November 2018 invoice (for October's work) was presented to Plaintiffs.) Even if substantial completion had occurred (it had not), it would not have excused Plaintiffs from paying the second to final invoice, which was dated in November of 2018 for work, materials, and reimbursements during October of 2018.

### 4. Plaintiffs Cannot Use Whipple, Inc.'s Stoppage of Work, Which was Due to Plaintiffs' Non-payment of the Penultimate Invoice, to Justify Hiring Outside Contractors.

If Plaintiffs desired to breach the Construction Agreement by using outside workers (workers not under the supervision and control of Whipple, Inc.) on the project, they were entitled to do so. However, this was only an issue because Plaintiffs materially breached the contract by failing to pay Whipple, Inc.'s November invoice for October's work, and Whipple, Inc. ceased performing the contract and did not finish the house, complete punch list items, or

complete any warranty repairs where it would have to ask workers to continue working on the house without being paid for their last month's work.  The "damage" Plaintiffs claimed to be mitigating is the consequence of their own actions in materially breaching the Construction Agreement instead of paying the November 2018 invoice.  Had the November 2018 invoice been paid by Plaintiffs, Whipple, Inc. would have finished the project, reached agreement with Plaintiffs on the elements of substantial completion, and finished the punch list items contained in that agreement.

**B.** **PLAINTIFFS' FRAUD CLAIM FAILS AS A MATTER OF LAW**.

    **1.** **Plaintiffs Failed to Plead Sufficient Facts**.

In Plaintiffs' Memorandum in Opposition, they argued that "[t]he fraud theory in this case is straightforward."  Plaintiff's Memorandum in Opposition, at p. 9.  *As pleaded*, however, the fraud theory is anything but "straightforward."  Due to Plaintiffs' failure to plead facts that establish each of the nine required elements of fraud, Plaintiffs' fraud claim fails as a matter of law.

While reviewing the respective parties' memoranda on summary judgment and the pleadings in this matter, it must be remembered that the fraud claim is made against Defendant Jason Whipple in his personal capacity.  Defendants' believe that the reason Plaintiffs included a fraud claim against Defendant Jason Whipple in his personal capacity is to intimidate him and to prevent a judgment in this matter from bankrupting the defendants that are corporate entities.  Although the fraud and breach of contract claims in Plaintiffs' Complaint were based on several of the same facts, the Complaint alleged fraud against Defendant Jason Whipple *personally*, while alleging breach of contract against Defendants Whipple, Inc. and Virtual Design Concepts, LLC only as corporate entities.

As quoted in Defendants' Memorandum in Support, the Idaho Supreme Court's decision in *Thurston Enterprises, Inc. v. Safeguard Bus. Sys., Inc.* laid out the nine distinct elements that are required to prove fraud:

> A party alleging fraud must prove the following nine elements by clear and convincing evidence: (1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) the hearer's right to rely; and (9) consequent and proximate injury.

*Thurston Enterprises, Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 709, 720, 435 P.3d 489, 500 (2019).  Each of these nine elements of fraud must be proven by clear and convincing evidence. *Id.*  As pleaded in their Complaint, however, Plaintiffs:

- on one of the elements (**1. statement of fact**), alleged different facts than Plaintiffs argued in their Memorandum in Opposition on one of the elements (**1. statement of fact**);

- alleged facts demonstrating that a subsequent written agreement between the parties (the Construction Agreement) superseded, or at least clarified or corrected, the actions of Defendant Jason Whipple that Plaintiffs alleged in their Complaint to achieve one of the elements (**2. Falsity of the Statement**);

- failed even to allege facts supporting four of the nine elements (**3. materiality of the statement**; **4. speaker's knowledge of the statement's falsity**; **5. speaker's intent to induce reliance**; **6. hearer's ignorance of the statement's falsity**); and

- alleged facts that actually directly disprove one of the elements (**8. hearer's right to rely on statement**).

As a result, Plaintiffs are unable to establish six of the nine elements required to prove fraud, which must be proven with clear and convincing evidence, and Defendants are entitled to summary judgment on Plaintiffs' fraud claim.  *See* Complaint at pp. 19-21, ¶¶ 77-88.

### a.    Element One: Statement of Fact.

In their Complaint, Plaintiffs alleged the following, which is the only allegation in the Complaint that could be interpreted to include any "Statements of Fact" made by Defendant Jason Whipple ***in his individual capacity***, which is how Plaintiffs' fraud claim is alleged:[1]

> …during initial design discussions, Whipple initially represented to Heeb/Merchant that his "partner" would work with Whipple on lighting and home automation.  Colton Scholtec, the alleged partner, and Whipple jointly demonstrated their products at their common office.

Complaint, ¶ 15.  This allegation by Plaintiffs is incorrect, because "Whipple," which was defined in the Complaint as "Whipple, Inc., an Idaho corporation, **and** Jason Whipple, an individual (**collectively** "Whipple")" (Complaint, ¶ 4 (emphasis added)), did not share a "common office" with Colton Scholtec or Colton Scholtec's business, Audio Video Plus, LLC.[2] However, this truly is the only allegation in the Complaint that could be interpreted to include any "Statement of Fact" made by Defendant Jason Whipple **in his individual capacity**, which is how Plaintiffs alleged their eighth claim for relief (*see* Complaint, ¶ 4

Although Plaintiffs' eighth claim for relief (fraud) was alleged against Jason Whipple in his individual capacity, the allegations contained in Plaintiffs' eighth claim for relief implicated

---

[1] Although the Complaint defined the term "Whipple" to include **both** "Whipple, Inc., an Idaho corporation, **and** Jason Whipple, an individual," "collectively" (Complaint [Dkt. 1], ¶ 4), the Plaintiffs' Eighth Claim for Relief in the Complaint was alleged against only Jason Whipple, in his individual capacity.  *See Id.* at p. 19.

[2] Defendant Virtual Design Concepts, LLC ("VDC"), a limited liability company operated by non-defendant Sarah Whipple (Jason's spouse), leased space in VDC's office to Audio Video Plus, LLC ("AVP"), the limited liability company of which Colton Scholtec was the manager.  "Whipple," as defined in the Complaint, did not share a "common office" with Colton Scholtec or AVP.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT                    11

"Whipple," as defined in the Complaint to include **both** Defendant Jason Whipple and Defendant

Whipple, Inc., **collectively**.  For example:

> 78.    The Construction Agreement provided that Whipple would pass
> through to Heeb/Merchant all discounts extended to Whipple on all discounted
> and wholesale items and provide Heeb/Merchant documentation for all cost items.

Complaint, ¶ 78.  If this is the "statement of fact" relied upon by Plaintiffs to accomplish the first

of the nine elements required to prove fraud, Plaintiffs' eighth claim for relief should be

dismissed straightaway, because it might form the basis for an action sounding in contract (*e.g.*, a

breach of contract claim against Whipple, Inc. - *see* Complaint ¶¶ 49-52, which uses this exact

element in Plaintiffs' breach of contract claim against Whipple, Inc.), but it is inappropriate in an

action sounding in tort (*e.g.*, fraud).  Also, this claim by Plaintiffs only serves to demonstrate

their reliance on the actual terms of the Construction Agreement, rather than relying on the pre-

contracting statements of Defendant Jason Whipple, who was not personally a party to the

Construction Agreement.

### b.    Element Two: Falsity of the Statement.

If the statement of fact alleged by Plaintiffs to achieve the first of the nine required

elements to prove fraud was "that [Whipple's] "partner" would work with Whipple on lighting

and home automation" (Complaint, ¶ 15), then that statement indisputably is not false - Colton

Scholtec, who Plaintiffs allege Whipple said was his "partner," did, in fact, "work with Whipple

on lighting and home automation."  *Id*.

### c.    Element Three: Materiality of the Statement.

As argued in Defendants' Memorandum in Support, even if "Whipple" had represented

to Plaintiffs that Colton Scholtec was his "partner" (he did not), that statement was made

immaterial by the parties' subsequent negotiation and execution of the Construction Agreement.

Furthermore, the Complaint contains no allegations that Colton Scholtec, who Plaintiffs claim "Whipple" represented to be his "partner," would provide the lighting and automation *for free, or even at a discount*; rather the only allegations by Plaintiffs are:

> 15.    …Whipple initially represented to Heeb/Merchant that his "partner" **would work with Whipple on lighting and home automation**…"

(Complaint ¶ 15, emphasis added), and

> 82.    Whipple made representations to Heeb/Merchant that were knowingly false, including that Colton Scholtec, Whipple's alleged partner, **would provide the lighting and automation package.**"

(Complaint, ¶ 82, emphasis added).   Whether or not Colton Scholtec was the partner of "Whipple" (as defined in the Complaint) is immaterial, because ***it is not even alleged*** by Plaintiff that this had any effect on billing for the lighting and automation systems.

### d.    Element 8: Hearer's Right to Rely.

Plaintiffs had no right to rely on such statement, if only because Plaintiffs and Whipple, Inc. entered into the Construction Agreement, which was controlling and did not provide for different treatment of Colton Scholtec's invoices and did not exempt Plaintiffs from paying for Colton Scholtec's products, labor, and materials.   Any reliance Plaintiffs placed on a statement allegedly made by Jason Whipple prior to execution of the Construction Contract was unjustified and unreasonable.

Likewise, Plaintiffs' reliance on this "partner" statement to mean that Whipple, Inc. was making no money for non-material costs is unreasonable for at least two reasons.

The first reason Plaintiff's reliance is unreasonable is because the meaning Plaintiff attached to Whipple, Inc.'s statement is contradicted by the Construction Agreement that

Plaintiffs signed – the same Construction Agreement their attorney reviewed and revised. Section 2 of the Construction Agreement states in part:

> Therefore, on the next one million five hundred thousand dollars ($1,500,000) of *billed costs*, the Contractor's Fee will be five percent (5%) and for *any billed costs* in excess of one million five hundred thousand dollars ($1,500,000), the Contractor's fee will be ten percent (10%)."

Complaint, Ex. B.  The Construction Agreement does not say "any billed costs other than labor and subcontractors."   It says "billed costs," and Plaintiffs were billed for labor and subcontractors.  Further, section 4 of the Construction Agreement states: "Contractor agrees to extend all Contractor discounts on all discounted and wholesale cost items with a maximum markup of 10% *plus* the Contractor's Fee described in Section 2." This indicates that the Contractor's Fee is something separate from a markup, and applies to all costs billed, consistent with Section 2 of the Contract.  *Id*.

The second reason Plaintiff's reliance is unreasonable is because this statement was made in February 2016.  By that time, Whipple, Inc. already had been working on the house and sending Plaintiffs invoices since May of 2015, which invoices included the Contractor's Fee applied to *all* billed costs.   Second Leonard Declaration, Ex. D.[3]  This was during the time when the parties seemingly were operating under the unsigned September 2015 version of the Construction Agreement, the language of which regarding the Contractor's Fee was identical to the Construction Agreement, which was signed in March 2016.  July 17, 2020, Declaration of Heeb, Ex. B; Complaint, Ex. B.  Plaintiffs cannot reasonably expect the same words to suddenly

---

[3] Plaintiffs state "Jason Whipple made a representation that he does not charge a markup for labor and, almost immediately, Plaintiffs were invoiced by Alderwood Builders that contained markups for labor."  This is misleading because at the time Whipple, Inc. made that statement, Plaintiffs had been sent invoices applying the Contractor's Fee to all billed costs for months.  A more accurate statement is "Whipple, Inc. made a rather confusing statement regarding 'markups' after approximately eight months of work where Plaintiffs had been invoiced for all billed costs plus a Contractor's Fee and never complained or thought to ask questions."

be applied differently.  Plaintiffs were appropriately charged the Contractor's Fee for all billed costs.

2. **No Genuine Issue of Material Fact - Whipple Did Not Say Scholtec Was His Partner.**

As explained in Defendants' initial Memorandum, it was Lauren Warboy who told Heeb that Colton and Jason were partners, not Jason Whipple.  Jason Whipple did not say that because it was not true.  Lauren Warboy said that because of what appears to be an assumption based on AVP (Colton Scholtec) and VDC (Sarah Whipple) sharing office space, and Jason Whipple likely saying that Colton Scholtec would provide the lighting, which he did through AVP. Further, AVP pays VDC a sales commission/referral fee when VDC refers a client to AVP. Second Leonard Declaration, Ex. A, 124:5 – 127:17.  Jason Whipple did not try to hide that information from Plaintiffs or Plaintiffs' counsel; he offered up that information without being asked about it at the deposition, and the sales commission/referral fee agreement between VDC and AVP simply was not relevant to Whipple, Inc.'s Construction Agreement with Plaintiffs, and long predates that Construction Agreement.

Plaintiffs want to characterize this nefariously as a "kickback," but it's merely a sales commission for VDC bring work to AVP, and it is completely fair, legal, and between VDC and AVP.  AVP paying VDC a referral fee does not implicate Whipple, Inc.'s Construction Agreement.  Whipple, Inc. or Jason Whipple are not "marking up" AVP's charges by virtue of AVP paying VDC a sales commission/referral fee.  Rather, AVP invoiced Whipple, Inc. based on the percentage of its bid it completed that month, and AVP paid VDC the sales commission/referral fee from the total amount that AVP is paid by Whipple, Inc..  Second Leonard Declaration, Ex, A,  139:20 – 140:20.

If Colton Scholtec and Jason Whipple were partners intent on defrauding clients, it would not even make sense to go to all this trouble; Jason Whipple could merely ask Colton Scholtec to pay him directly, raise his bid, or somehow otherwise scheme.  However, there would be no incentive for Colton Scholtec to do so because it would result in less money in his pocket, and/or the alleged "partnership" would ultimately net the same amount.  This conspiracy theory fails once a person realizes it would be robbing Peter to pay Paul.  Plaintiff's theory of partnership is nonsensical.  The only incentive that makes any sense in this circumstance is exactly as Jason Whipple told it at is deposition: AVP pays VDC a sales commission/referral fee when AVP gets work because VDC refers work to AVP.

In light of all of this, it would be unreasonable for Plaintiffs to rely upon an alleged statement by Jason Whipple that he and Colton Scholtec were partners and expect AVP's work and materials for Whipple, Inc.'s cost where Whipple, Inc. and AVP are their own entities, even if Jason Whipple and Colton Scholtec were partners.  As much as Plaintiffs attempt to blur the lines between entities and individuals, there really is no question that the relevant parties to the contracts are entities and there is no business relationship between any individuals involved in this matter other than Plaintiffs.[4]  If Jason Whipple wished to defraud Plaintiffs somehow by stating that he and Colton Scholtec were partners, it would not make sense to transparently bill Plaintiffs for AVP's work and charge a Contractor's Fee for this work.  Second Leonard Declaration, Ex. E.  Given how carefully Defendant Randal Heeb, a PhD economist at Bates White and professional poker player, went through the invoices with a fine tooth comb during construction complaining about the costs of construction, one would expect him to complain about this alleged "fraud" much earlier.  Second Leonard Declaration, Ex. F.

---

[4] For example, Plaintiffs confusingly refer to both Whipple, Inc. and Jason Whipple as "Whipple" in the Complaint such that it is difficult to determine which party Plaintiffs are directing their allegations against.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT                   16

### 3.    There Was No Fraudulent Billing.

Plaintiff's theory that Jason Whipple committed fraud because Whipple, Inc. made a profit by marking up its cost for labor is fatally flawed.  Plaintiffs place an undue amount of weight on a February, 2016 email from Whipple, Inc. to Plaintiff Randal Heeb, in which Whipple Inc. stated: "I do not need to charge more than 10% markup.  I also do not charge markup on subcontracts, labor and equipment."  While that may be a confusing statement, it is easily explained by sloppy wording and failing to properly differentiate between the terms "markup" and a "Contractor's Fee."  It is not indicative of any intent to deceive, which is one of the elements of fraud, for the reasons further set forth below.

### 4.    Plaintiffs Misunderstand the Nature of Subcontractors and Contract Labor.

At the deposition of Jason Whipple, he explained at length that subcontractors submit bids on a certain scope of work, whereas contract labor is billed at the hourly rate stated in the Construction Agreement, and that the Contractor's Fee was applied to both as stated in the Contract.   Second Leonard Declaration Ex. A, 66:3 – 76:21, 174:15 – 176:7.   There was absolutely no attempt to hide this, and it is reflected in every invoice sent to Plaintiffs as well as the Construction Agreement.  Plaintiffs' purported misunderstanding of a clear contractual term does not mean Plaintiffs were defrauded.  Whipple, Inc. is allowed to invoice per the Contractual rates plus its Contractor's Fee.

Plaintiff complains that, for example, Highmark Builders invoiced Whipple, Inc. for labor at $41 per hour, but Whipple, Inc. invoiced Plaintiffs these journeymen at $45 per hour plus its Contractor's Fee.  As stated in Jason Whipple's deposition, Highmark Builders was contract labor.  Second Leonard Declaration, Ex. A, 93:4 – 19.  The situation is exactly the same regarding Lucid Creative Services, although the rates charged were different.  Lucid invoiced

Whipple, Inc. $31 per hour, and because they were journeymen, Whipple, Inc. charged the $45

per hour contract rate plus its Contractor's Fee.   One reason for the difference is cost is the

difference in price: it is simpler to charge the agreed-upon $45 per hour for journeymen instead

of charging, say $36 per hour and losing money on Highmark's work.

5.   **Plaintiffs' Theory that Jason Whipple Signed the Construction Agreement in an Individual Capacity is Groundless.**

Plaintiffs know exactly who they contracted with.   It is the same entity listed on the

invoices Plaintiffs was sent between May of 2015 and March of 2016, when they signed the

Construction Agreement.   The invoices received by Plaintiffs did not have Jason Whipple's

name on them anywhere.   Rather, at the top they state:



Whipple, Inc. - RCE-35146
265 Potter Lane, McCall, ID  83638
Ph: (208) 869-5618  Fax:  (888) 869-0439
email@alderwoodbuilders.com

At the bottom, they state:

*Alderwood Builders is a division of Whipple, Inc.*
*Contractor's License # RCE-35146*

Plaintiffs are attempting to create ambiguity where there is none just to have a claim

against Jason Whipple, individually, that would survive bankruptcy of the entities named as

defendants in this case.   It is chaff.

The signature on the Construction Agreement looks like this:

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT                    18



Plaintiffs argue that the inclusion of "ET AL" on the Construction Agreement after Jason Whipple's name must somehow mean that Jason Whipple signed the Construction Agreement in an individual capacity. Plaintiffs never exactly explain how or why "ET AL" means "Jason Whipple, individually," though. The simple answer is that Jason Whipple, who dropped out of high school, incorrectly capitalized all letters, and did not include the period after "AL," has no idea what "*et al.*" means. Second Leonard Declaration Ex. A, 15:18 – 22. Jason Whipple simply is a general contractor who was attempting to make Whipple, Inc.'s form contract look more professional by (incorrectly) using legal jargon. When asked by Plaintiffs' counsel during his deposition, Jason Whipple testified that he did not know what it meant:

> Q. What does "et al." mean, if you know?
>
> A. The registered contractor for Whipple, Incorporated. I mean, what do those specific initials mean? I can't tell you. I don't know.

Second Leonard Declaration Ex. A, 63:8 – 11.

Plaintiffs are only arguing that Jason Whipple signed the Construction Agreement in his individual capacity because their fraud claim seeks to hold Jason Whipple liable for what should have been (and was pleaded) as an alleged breach of contract.

**C.   PLAINTIFF SUFFERED NO ASCERTAINABLE LOSS AS A RESULT OF ANY ALLEGED FAILURE TO PROVIDE DISCLOSURES, AS REQUIRED TO SUPPORT A CLAIM UNDER THE IDAHO CONSUMER PROTECTION ACT.**

Plaintiffs do not address Whipple, Inc.'s argument that money owed pursuant to a legal obligation cannot comprise "ascertainable loss" pursuant to the Idaho Consumer Protection Act.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT                                    19

Memorandum in Support, 20; *Yellowpine Water User's Ass'n v. Imel*, 105 Idaho 349, 352, 670 P.2d 54, 57 (1983).

There are no facts pled in the Complaint against Whipple, Inc. regarding the nature of any alleged damages based on anything other than the contractual relationship between Defendants and Whipple, Inc..  Whipple, Inc. is at a loss as to the nature of these alleged damages, and the vague nature of the Complaint leaves Whipple, Inc. with the impression that the allegations were vague because there are no ascertainable losses related to Idaho Code Section 45-525(2) disclosures.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotations, citations, and brackets omitted).  Because no facts related to damages other than construction defects or being denied the benefit of the bargain are alleged, the only damages alleged are based on the Construction Agreement, and those alleged damages would all have been remedied if Plaintiffs paid Whipple, Inc.'s invoice for the work completed in October 2018, and Whipple, Inc. completed any punch list items and performed pursuant to its warranty.  Instead, Plaintiffs decided not to pay Whipple, Inc. what it was due pursuant to the Construction Agreement, and Whipple, Inc. recorded its lien.  To the extent that the lien is the basis of Plaintiffs' alleged damages, it is money owed pursuant to a legal obligation.

Instead, Plaintiffs focus solely on causation, and argue that Idaho Code Section 48-608(1) does not require them to prove causation.  The statutory language of Idaho Code Section 48-608(1) is clear and requires both causation and ascertainable loss.

Any person who purchases  . . . services and *thereby suffers any ascertainable loss . . . as a result of* the use or employment by another person of a method, act

or practice declared unlawful by this chapter, may treat any agreement incident thereto as voidable or, in the alternative, may bring an action to recover actual damages or one thousand dollars ($1,000), whichever is the greater.

I.C. § 48-608 (emphasis added). Plaintiffs' Complaint recognizes this, as ¶ 92 pleads at least the elements of causation and damages.  However, Plaintiffs now argue that they are not required to prove causation, citing *White v. Mock*, 140 Idaho 882, 890, 104 P.3d 356, 364 (2004).[5]  It appears that in *White v. Mock,* the Idaho Supreme Court inexplicably ignored the words "as a result of" and in doing so encroached on the province of the Legislature, in contravention of Article II, section 1 of the Idaho Constitution, essentially revising the law as it saw appropriate. [6] Although the Idaho Supreme Court has ruled that causation is not required despite the language of the statute, every other Idaho case on the issue was decided otherwise.[7]  Further, the Idaho Supreme Court's ruling runs afoul of the Legislature's statement of purpose for the Idaho Consumer Protection Act, which states in part "[i]t is the intention of the legislature that this chapter be remedial and be so construed."  I.C. § 48-601.  If statutory damages are remedial (as opposed to punitive), this begs the question of what they are remedying.  The only logical answer to this question is that the damages are remedying a loss caused as a result of a deceptive act or practice.

---

[5] Plaintiffs also cite a dicta sentence of *Fenn v. Noah*, 142 Idaho 775, 779, 133 P.3d 1240, 1244 (2006), which itself was citing *White v.Mock*, 140 Idaho 882, 890, 104 P.3d 356, 364 (2004).  This sentence was dicta, as the Court dismissed Fenn's claims on other grounds.  *Fenn v. Noah*, 142 Idaho 775, 781, 133 P.3d 1240, 1246 (2006).

[6] "The question is whether this Court, by entertaining review of a particular matter, would be substituting its judgment for that of another coordinate branch of government, when the matter was one properly entrusted to that other branch."  *Nye v. Katsilometes*, 165 Idaho 455, 460, 447 P.3d 903, 908 (2019).

[7] *See Jackson v. Wood*, 124 Idaho 342, 344, 859 P.2d 378, 380 (Ct. App. 1993) (where Court found a deceptive act had occurred in selling off-brand gasoline, no statutory damages were awarded where there was no ascertainable loss because Plaintiff was able to sell the gasoline); *Shurtliff v. Nw. Pools, Inc.*, 120 Idaho 263, 266, 815 P.2d 461, 464 (Ct. App. 1991) (where court found a violation of Consumer Protection Act where defendants built an incorrectly sized pool, but did not award damages because they were not proven).

The Idaho Supreme Court's reading of the statute is wholly untenable.[8]  If causation is read out of the statute, is damages/ascertainable loss?  Damages are inextricably linked to causation, and when they become unmoored, it leads to a nonsensical windfall.  For example, a used car salesman attempts to sell a plaintiff a car and lies to the plaintiff about the car's condition, and the plaintiff does not buy the car the salesman lied about but buys a different car from the salesman, and the plaintiff stubs his toe two days later and his toenail falls off, can that plaintiff sue the used car salesman for the ascertainable loss of his toenail and recover $1,000 because he was lied to?

Whipple Inc.'s reading of I.C. § 48-608 is that "suffers ascertainable loss . . . as a result of" requires proof of causation, and that the $1,000 in allowable statutory damages is a floor. If the Idaho Supreme Court's reading is considered to be reasonable, and this Court finds that Whipple, Inc.'s reading is reasonable then I.C. § 48-608 is ambiguous and void for vagueness because it is not worded in a manner providing for uniformity of enforcement, as evidenced by all other Idaho cases on the topic ruling that causation is required.[9]

Thankfully, *White v. Mock* did not rule that a plaintiff is relieved from proving any ascertainable loss, and here, as far as Whipple, Inc. can tell, Plaintiffs fail to allege facts

---

[8] In *White v. Mock*, the jury found that the deceptive act did not cause the alleged damages.  The Idaho Supreme Court found that this was supported by substantial evidence, but ruled that statutory damages must be awarded anyway.  It might appear that the Court disagreed with the jury's verdict but was unable to overturn a verdict supported by substantial evidence, but disliked the defendant's conduct and applied the statute punitively rather than remedially.  However, if causation was not required, there was no reason for the Court to rule that the verdict that the deceptive act did not cause damages was supported by substantial evidence if it was legally irrelevant.  The Court could have merely ruled  *White v. Mock*, 140 Idaho 882, 104 P.3d 356 (2004).

[9] " [T]he void-for-vagueness doctrine, premised upon the Due Process Clause of the Fourteenth Amendment, requires that a statute defining criminal conduct or imposing civil sanctions be worded with sufficient clarity and definiteness that ordinary people can understand what conduct is prohibited, and **the statute must be worded in a manner that does not allow arbitrary and discriminatory enforcement**."  *Burton v. State, Dep't of Transp.*, 149 Idaho 746, 748, 240 P.3d 933, 935 (Ct. App. 2010) (emphasis added, footnote omitted)

"A statute may be void for vagueness if it . . . fails to establish minimal guidelines to govern law enforcement or others who must enforce the statute."  *State v. Martin*, 148 Idaho 31, 35, 218 P.3d 10, 14 (Ct. App. 2009).  *Also see Hunt v. City of Los Angeles*, 638 F.3d 703, 711–13 (9th Cir. 2011) (ambiguous ordinance was void for vagueness where it failed to provide guidance for uniform enforcement).

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT                                    22

supporting any loss beyond its breach of contract-related claims, all of which at this point are unproven, have their genesis in money owed to Whipple, Inc. pursuant to the legal obligations of the Construction Agreement, or are Plaintiffs' fault in materially breaching the Construction Agreement and thereby preventing completion of the home, punch list, and warranty items.

On the basis of the undisputed facts in this matter, Defendants have met the standard for summary judgment with regard to Plaintiffs' sixth (breach of express warranty), eighth (fraud), and ninth (Consumer Protection Act violation) claims.  Accordingly, for the reasons set forth in Defendants' Memorandum in Support and this Reply Memorandum, Defendants respectfully request judgment entered in their behalf, as set forth on page 29 of Defendants' Memorandum in Support.

DATED this 1st day of August, 2020.

CLARK WARDLE LLP

By: */s/ Joshua J. Leonard*                
 Joshua J. Leonard, Bar Number 7238
 Attorneys for Defendants
 CLARK WARDLE LLP
 251 E. Front Street, Suite 310
 P.O. Box 639
 Boise, Idaho 83701
 Telephone: (208) 388-1000
 Facsimile: (208) 388-1001
 Email: jleonard@clarkwardle.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of August, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:


Tyler J.  Anderson             [  ] U.S.  Mail
HAWLEY TROXELL ENNIS & HAWLEY LLP    [  ] Hand-Delivery
877 Main Street, Suite 1000        [  ] Federal Express
P.O.  Box 1617                 [  ] Via Facsimile 208.954.5275
Boise, ID 83701-1617        [X] Via ECF/E-Mail
                                     to: *tanderson@hawleytroxell.com*


                                     *    /s/ Joshua J. Leonard    *
                                     Joshua J.  Leonard